UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ROBERT P.[1],                           )
                                        )
           Plaintiff,                   )
                                        )
     v.                                 )        CIVIL NO.  3:21cv305
                                        )
KILOLO KIJAKAZI, Acting                 )
Commissioner of Social Security,        )
                                        )
           Defendant.                   )

OPINION AND ORDER

     This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the

Social Security Act. 42 U.S.C. § 423(a).  Section 405(g) of the Act provides, inter alia, "[a]s part

of his answer, the [Commissioner] shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based.  The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to

any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

     The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

_____

     [1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2.      The claimant has not engaged in substantial gainful activity since July 31, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: bipolar disorder, anxiety disorder, psychogenic seizure disorder, diabetes mellitus II, asthma, obesity, lumbar and bilateral hip degenerative disc disease and Crohn's disease (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform lifting, carrying, pushing and/or pulling 20 pounds occasionally and 10 pounds frequently. Sitting for 6 hours in an 8-hour work day, standing for 6 hours in an 8-hour work day, and/or walking for 6 hours in an 8- hour work day. Never climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel crouch, crawl, and climb ramps and stairs. Never work at unprotected heights, never around moving mechanical parts, and no commercial driving. No concentrated exposure to dust, odors, fumes and pulmonary irritants and no concentrated exposure to vibration. Able to perform simple, routine and repetitive tasks. Able to interact with supervisors and co-workers occasional brief and superficial contact, superficial contact defined as no lower than an 8 in terms of the 5th digit of the DOT Code. No work that involves direct interaction with the public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on March 2, 1971 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 20, 2021. On February 28, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 16, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

4

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred in evaluating the opinion of

Nurse Practitioner Laura Beach. The ALJ discussed this medical opinion as follows:

> On March 5, 2020, Laura Beach, FNP provided a Crohn's and colitis residual
> functional capacity questionnaire (20F). Ms. Beach stated that she has been
> treating the claimant since August of 2019 for left upper quadrant pain, chronic
> diarrhea and melena (20F/1). She opined the claimant's pain would frequently
> interfere with his attention and concentration (20F/1). That he is capable of a low
> stress job and pain can be debilitating (20F/2). He can walk less than 1 city block
> (20F/2). He can sit for 5 minutes and stand for 20 minutes at one time (20F/2). He
> can sit, stand and/or walk less than 2 hours in an 8-hour work day (20F/2). He
> needs ready access to a restroom and will need unscheduled restroom breaks 1-2
> times per hour for 30 minutes each in an 8-hour work day (20F/2). Various times,
> he will need to lie down during an 8-hour work day for 15 minutes (20F/2). He can
> never lift and carry 50 pounds, rarely lift and carry 20 pounds, occasionally lift and
> carry 10 pounds and frequently lift and carry less than 10 pounds (20F/2).He can
> occasionally twist and stoop and rarely crouch, squat, climb ladders and stairs
> (20F/2). She also opined he is likely to have good and bad days, but be absent from
> work more than four days per month (20F/3). This opinion does not provide any
> reference to any treatment notes to support such extreme limitations. She opined
> the claimant could only walk 1 block, but the claimant takes public transportation,
> shops, walks in the evenings and cares for young children all of which would
> require walking more than 1 block. Her opinion is also internally inconsistent as
> she suggest[s] the claimant can only sit for 5 minutes at a time, but then states that
> he would require one to two, thirty minute restroom breaks per hour, which would
> require sitting for more than 5 minutes at a time. Further, she suggests the claimant
> can sit, stand or walk for less than 2 hours in an 8-hour work day and lie down for
> 15 minutes at various times. However, the record shows the claimant
> consistent[ly] had a normal gait, strength and sensation. There is no indication he
> has weakness or atrophy. She does not provide any explanation as to the reason the
> claimant would be absent more than 4 days per month His endoscopy and
> colonoscopy were both normal, with exception of some diverticula. Therefore, the
> undersigned finds this opinion unpersuasive.

(Tr. 27-28).

Plaintiff argues that, contrary to the ALJ's holding, NP Beach's opinion is supported by

Plaintiff's treatment notes which contain supportive symptoms and abnormal findings, such as abdominal pain, nausea, vomiting, diarrhea, decreased bowel sounds, and tenderness to palpation in left lower quadrant. (Tr. 550, 552, 607, 608, 785, 789, 867-68, 879, 1065, 1106, 1194, 1198, 1299.) The ALJ commented on Plaintiff's ability to take public transportation, shop, and walk in the evening, and claimed that these activities were inconsistent with an inability to walk more than 1 block, as opined by NP Beach. (Tr. 28.) Plaintiff argues that the ALJ's analysis was predicated on speculation and assumptions. SSR 86-8 (ALJ not permitted to substitute "presumptions, speculations and suppositions" for evidence). *Accord White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence"). Plaintiff contends that taking public transportation, shopping, and walking in the evening are not inconsistent with an inability to walk more than 1 block and that the ALJ did not furnish evidence that these activities require that degree of walking. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (ALJ must construct logical and accurate bridge from evidence to conclusion).

Plaintiff testified that he could walk when his hip was not acting up; he was no longer taking public transportation, and that his wife drove him around. (Tr. 44.) The ALJ did not address this portion of Plaintiff's testimony in the decision. The record shows that Plaintiff suffered from chronic bilateral hip pain, sciatica, lumbar degenerative disc disease, and lumbar radiculopathy. (Tr. 677, 681, 802.) His treatment notes document objective findings such as hip pain with range of motion, tenderness to palpation over the lumbar region, and positive straight leg raising test (Tr. 677, 801), which support his walking difficulties. In a function report dated February 6, 2019, Plaintiff noted that his impairments affected his ability to walk. (Tr. 289.)

The ALJ also claimed that NP Beach's opinion was "internally inconsistent" because she opined that Plaintiff could only sit for 5 minutes at a time, but then stated that he would require one to two, thirty-minute restroom breaks per hour, which would require sitting for more than 5 minutes at a time. (Tr 28.) Plaintiff argues that the ALJ failed to consider the possibility that Plaintiff could only sit for 5 minutes at a time because he had to go to the bathroom. Moreover, the RFC questionnaire asked NP Beach how long Plaintiff could sit at a time in a competitive work situation, not how long he could sit on the toilet. (Tr. 1209.) Plaintiff had no choice but to sit when he needed to use the toilet, and he was not working while on the toilet. *Carradine*, 360 F.3d 756 (holding that an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws)

The ALJ remarked that NP Beach's opinion that Plaintiff could sit, stand or walk for less than 2 hours in an 8-hour workday and lie down for 15 minutes at various times was inconsistent with findings of normal gait, strength, and sensation. (Tr. 28.) But the ALJ did not explain the significance of any of these findings or why NP Beach's limitations were wrong. *O'Connor-Spinner*, 832 F.3d 698. The ALJ also noted that the record did not contain findings of weakness or atrophy. (Tr 28.) Plaintiff asserts that just because he did not exhibit weakness or atrophy, it does not mean that he did not suffer from disabling pain. *Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017). Plaintiff correctly notes that the ALJ had to explain the actual inconsistency between NP Beach's opinion and the evidence and not simply declare that NP Beach's opinion was inconsistent. In addition, the ALJ failed to consider that NP Beach's opinion was consistent with consultative examiner Dr. Smejkal's opinion who also opined that Plaintiff could not work. (Tr. 778.) Dr. Smejkal had no treating relationship with Plaintiff and was asked by the Agency to

examine Plaintiff. The ALJ was required to determine the persuasiveness of NP Beach's opinion based on how the evidence supported the opinion and how the opinion was consistent with evidence. *Etherington v. Saul*, 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *4 (N.D. Ind. Jan. 21, 2021) (An ALJ is required to consider the consistency of a physician's report with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).)

The ALJ stated that NP Beach did not provide a reason for why Plaintiff would be absent more than 4 days per month. (Tr. 28.) Plaintiff notes that the RFC questionnaire did not ask for a reason (Tr. 1210), and that the ALJ could have re-contacted NP Beach if he wanted to know the basis for the opinion. 20 § C.F.R. 404.1520b(2) ("If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency……(i)("We may recontact your medical source…."")). Plaintiff argues that the ALJ relied on his lay medical conjecture to conclude that Plaintiff would not be absent more than 4 days per month because his endoscopy and colonoscopy were both normal, with exception of some diverticula. (Tr. 28). Plaintiff notes that diverticulitis can cause severe abdominal pain, fever, nausea, and a marked change in one's bowel habits, and that his treatment notes consistently document these symptoms (Tr. 376, 550, 569, 608, 785, 861, 879, 1065, 1106, 1194, 1299), which would likely cause him to miss work. If Plaintiff missed even 1 day per month due to his flare-ups, per the vocational expert, he could not sustain a full-time, competitive job. (Tr. 64-65.)

The ALJ also failed to consider that NP Beach was a part of Franciscan Physician Network and had access to all of Plaintiff's emergency room treatment at Franciscan Health

Michigan City. (Tr. 549-619, 804-896, 1062-1102, 1103-1138, 1139-1207). *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1040 (N.D.Ind.2010) ("Even though it was not Bucholz who treated Dogan on every visit, Dogan was seen at the same facility and because of that, Bucholz had access to all of his visits and could give her opinion on his functional capacity.")

The ALJ found the opinions of State agency medical consultants J.V. Corcoran, MD and Joshua Eskonen, DO, who limited Plaintiff to light work with occasional postural limitations, to be persuasive. (Tr. 29, 98-100, 114-16, 132-34, 148-50.) But opinions from State agency reviewers are "essentially worthless" where they do not have access to the claimant's full record. *Childress*, 845 F.3d 792. Plaintiff argues that the ALJ erred in adopting the opinions of Drs. Corcoran and Eskonen because they determined that Plaintiff only suffered from the severe impairments of epilepsy, depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders (Tr. 96, 130), and the ALJ determined that Plaintiff also had other severe impairments namely psychogenic seizure disorder, diabetes mellitus II, asthma, obesity, lumbar and bilateral hip degenerative disc disease and Crohn's disease. (Tr. 18). The State agency physicians did not have the opportunity to review more than 400 pages of medical evidence. (Exhibits 17F- 27F, Tr. 1062-1497). *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (holding the ALJ erred in crediting the state- agency opinions, which were outdated and missing approximately 70 pages of medical records); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion).

Plaintiff points out that the evidence after the State agency physician's review at the

reconsideration level demonstrated the severity of Plaintiff's gastrointestinal impairments and his need for frequent bathroom breaks due to runny stools and fecal urgency. On November 14, 2019, Plaintiff sought emergency care for abdominal pain and vomiting. (Tr. 1065.) He was admitted for observation for IV fluid management, anti-emetic, and pain control. (Tr. 1074.) He was discharged the following day with a diagnosis of abdominal pain, acute kidney injury, and acute gastroenteritis. (Tr. 1073.) On December 1, 2019, Plaintiff again sought emergency care for abdominal pain and painful defecation. (Tr. 1106.) He was admitted for further evaluation and management. (Tr. 1113.) He was discharged on December 3, 2019 with a diagnosis of intractable abdominal pain and emesis. (Tr. 1112.) On February 29, 2020, Plaintiff presented to the emergency room for evaluation of abdominal pain and explosive diarrhea. (Tr. 1194.) Physical examination demonstrated decreased bowel sound and abdominal tenderness in the left lower quadrant. (Tr. 1198.) He was discharged with a prescription of Bentyl. (Tr. 1201.) On March 11, 2020, Plaintiff again sought emergency care for ongoing, worsening abdominal pain, runny stools, and fecal urgency. (Tr. 1299.) Laura Beach, NP and David Fumo, MD diagnosed left upper quadrant pain, chronic diarrhea, and melena and he was recommended to undergo another colonoscopy and EGD. (Tr. 1299.) He underwent a colonoscopy which revealed small and large-mouthed diverticula. (Tr. 1310.)

This Court agrees with Plaintiff that, given the evidence regarding the severity of Plaintiff's gastric issues and his need for emergency care, the ALJ should have requested the presence of a medical expert at the hearing or sent interrogatories to a medical expert, following the hearing. *Stage v. Colvin*, 812 F3d 1121,1125 (7th Cir. 2016) (The ALJ erred by himself evaluating the significance of new report showing need for a hip replacement and evidence of

10

further spinal degeneration); *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

The ALJ found the State agency opinions limiting Plaintiff to light work to be the most persuasive because the record showed normal range of motion and no use of an assistive device (Tr. 29). *Moreno*, 882 F.3d 729; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The ALJ did not explain why evidence of normal range of motion and no use of an assistive device was consistent with a light RFC. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (ALJ is required to build a "logical bridge" between the evidence and his conclusions). Medical evidence demonstrates that Plaintiff consistently complained of low back pain radiating down his hips associated with numbness, tingling, muscle spasm, and weakness (Tr. 675, 681, 799) and exhibited tenderness to palpation over the lumbar region, hip pain with range of motion testing, and positive straight leg raising test (Tr. 677, 801). Bilateral hip x-rays dated April 23, 2019 showed degenerative changes (Tr. 690) and a lumbar x-ray showed endplate osteophytes (Tr. 691). During an in-person examination in July 2019, consultative examiner Dr. Smejkal opined that Plaintiff was unable to do work related activities such as prolonged sitting, standing and walking due to pain and stiffness in the lower back. (Tr. 778.) In his function report from February 2019, Plaintiff noted that his impairments affected his ability to stand and walk. (Tr. 289.) The ALJ did not address how this evidence supported a light RFC.

The ALJ held that the State Agency opinions were the most persuasive because Plaintiff was not experiencing flare ups (at least to the degree that he had previously), since he discontinued Ozempic. (Tr. 29.) But the ALJ failed to consider that despite discontinuing Ozempic in December 2019 (Tr. 1123), Plaintiff again sought emergency care in February 2020

11

and March 2020 for abdominal pain and explosive diarrhea (Tr. 1194, 1201, 1299). Moreover, the ALJ failed to acknowledge Plaintiff's testimony that he experienced flare-ups every few days. (Tr. 55.) Thus, the ALJ erred by engaging in a selective reading of the evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014).

The Commissioner, in response, contends that Plaintiff is merely offering alternative interpretations of the evidence.  However, it is clear that the Plaintiff is not offering "interpretations" at all, but simply pointing out all the evidence that the ALJ failed to consider. Plaintiff is correct that the ALJ failed to develop a logical bridge from the evidence to his conclusion, thus remand is warranted for a proper discussion of the medical evidence.  SSR 96-8p; *accord Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must sufficiently trace the path of his or her reasoning such that a Court can engage in meaningful appellate review).

Next, Plaintiff argues that the ALJ's RFC assessment lacked evidentiary support, as the ALJ failed to account for Plaintiff's need for unpredictable bathroom breaks. The ALJ found Plaintiff's Crohn's disease to be a severe impairment. (Tr. 18.) Plaintiff notes that the record demonstrates the severity of his Crohn's disease and that he continued to have flare-ups requiring the need for bathroom breaks in an unpredictable manner. Plaintiff testified that at his last job, he took long bathroom breaks due to the Crohn's disease and it affected his productivity. (Tr. 59.) He indicated that he experienced flare-ups every few days and during a flare-up, he experienced vomiting, diarrhea, and left-sided flank pain. (Tr. 55-56.) He described the pain as crippling, burning, and stabbing in nature. (Tr. 56.) During the period at issue, he sought emergency care on numerous occasions for abdominal pain, nausea, vomiting, and diarrhea. (Tr. 550, 552, 861, 879,

12

1194, 1299.)

Despite this evidence, the ALJ never addressed whether Plaintiff would require restroom breaks, and thus be off task for a portion of the day. *Sikorski v. Berryhill*, 690 Fed. App'x 429, 433 (7th Cir. 2017) (The ALJ erred when she failed to make a finding regarding the required length or frequency of bathroom breaks in cases where that may affect the claimant's ability to maintain full time work). The ALJ discounted the need for absences (Tr. 28), but never made a finding about the need (or lack thereof) of bathroom breaks.

Also, despite finding that Plaintiff's psychogenic seizure disorder was a severe impairment, the ALJ did not address limitations stemming from the psychogenic seizures in his RFC analysis. (Tr. 17, 21.) Once a claimant alleges to suffer a particular symptom-related functional restriction, SSR 96-8p requires an ALJ to explain how evidence either supports or fails to support that particular restriction. An EEG dated December 8, 2018, captured a typical episode consisting of hand shaking, moaning, head shaking, body shaking which lasted almost half an hour and was consistent with nonepileptic psychogenic seizure. (Tr. 667.) During a neurological consultation on February 11, 2019, Plaintiff described experiencing 2-3 seizure episodes per week, where he started suffering from shakes throughout his body and was unable to speak. (Tr. 664.) Ms. Robison diagnosed conversion disorder with seizures. (Tr. 667.) On August 26, 2019, Plaintiff described experiencing more seizures. (Tr. 669.) He detailed that the seizures also started affecting his legs causing them to shake. *Id*. Ms. Robison recommended further EEG testing. (Tr. 673.)

The ALJ's RFC assessment is the most a claimant can sustain, full-time. SSR 96-8p. Plaintiff testified that stress triggers his seizure episodes. (Tr. 57.) When he started feeling like a

seizure was kicking in, he needed to lie down (Tr. 58), and lying down and not being active are inconsistent with light work. SSR 83-1020. Thus, if the seizures incapacitated Plaintiff during work hours, that would have a significant impact on his ability to sustain full-time, competitive work, and the ALJ should have listed an accommodation in the RFC. *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) (RFC is not evaluated exclusively by best days, intermittent attendance normally precludes full time work); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (ALJ must consider whether one who suffers good and bad days could hold a job).

The ALJ noted that he considered Plaintiff's obesity in combination with his other impairments while devising the RFC. (Tr. 27.) However, the ALJ's discussion regarding Plaintiff's obesity was perfunctory and insufficient. SSR 19-2p requires an ALJ to explain how he considers a claimant's obesity alone and in combination with a claimant's other impairments. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("combination of impairments could impose greater restrictions than any of Thomas's impairments taken singly."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Here, the ALJ offered no explanation as to how he addressed the combination of Plaintiff's back pain, bilateral hip pain, Crohn's disease, and excessive weight on his ability to work. SSR 19-2p (The effect of obesity can be exacerbated with certain conditions, including joint related impairments). The ALJ did not explain how he determined, when considering the effects of a 240-pound frame on degenerating hips and painful low back, that Plaintiff was not more significantly limited than the ALJ found. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (The ALJ was required to analyze the effect of obesity on Plaintiff's arthritis). If the ALJ thought that Plaintiff's obesity alone, or in combination with his other impairments, did not result in additional limitations on his ability to work, he should have

14

explained how he reached that conclusion. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).

Lastly, the ALJ found that Plaintiff's bipolar disorder and anxiety disorder were severe impairments and that they produced moderate restrictions in concentration, persistence, or pace. (Tr. 18, 20.) The ALJ, however, did not include moderate restrictions in concentration, persistence, or pace in the RFC and instead found that Plaintiff could perform simple, routine, and repetitive tasks. (Tr. 21). A limitation to simple tasks addresses only the complexity of tasks that a claimant can perform and not the claimant's ability to perform those tasks over the course of a workday. *Radosevich v. Berryhill*, 759 F. App'x 492, 494-95 (7th Cir. 2019) (restriction to "simple, work-related decisions" with "few, if any, workplace changes" did not account for whether claimant could execute simple tasks over an extended time); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2002).

Here, treatment notes demonstrate that Plaintiff suffered from poor concentration, distractibility, racing thoughts, depressed mood, and anxiety. (Tr. 536, 698, 709, 750, 756.) In his function report, Plaintiff noted poor concentration and memory and also noted that he needed reminders to go places. (Tr. 284, 288, 289.) He explained that he could pay attention for only five minutes at a time. (Tr. 289.) There was no evidence that Plaintiff could sustain the concentration necessary to "carry out work-like tasks with reasonable pace and persistence" on an ongoing basis, 8 hours a day, 5 days a week, even if this restriction were properly defined. *See Moreno*, 882 F.3d at 730 ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). Thus, it was unreasonable for the ALJ to conclude that Plaintiff could focus on current tasks, even simple

15

tasks, over the course of an eight-hour workday.

The Commissioner contends that the medical record supports the RFC determination. Without citing to any medical authority, the Commissioner asserts that Plaintiff's demonstrated functional abilities, including the ability to walk, were consistent with an ability to perform light-level work. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The Commissioner notes that the ALJ observed that Plaintiff demonstrated steady gait with no use of an assistive device. However, the ALJ reached this conclusion based on a selective recitation of evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). Treatment records demonstrated that Plaintiff consistently complained of low back pain radiating down his hips associated with numbness, tingling, muscle spasm, and weakness (Tr. 675, 681, 799) and exhibited tenderness to palpation over the lumbar region, hip pain with range of motion testing, and positive straight leg raising test. (Tr. 677, 801). Bilateral hip x-rays dated April 23, 2019 showed bilateral hip degenerative changes (Tr. 690) and a lumbar x-ray showed endplate osteophytes. (Tr. 691). In July 2019, consultative examiner Dr. Smejkal opined that Plaintiff was unable to do work related activities such as prolonged sitting, standing and walking due to pain and stiffness in the lower back. (Tr. 778.) The ALJ was required to predicate his decision on all relevant evidence and was required to explain how he considered evidence that supported Plaintiff's application. *Plessinger*, 900 F.3d 915. The Commissioner and the ALJ did not address how this evidence supported a light RFC.

The Commissioner maintains that the ALJ did not include a limit to bathroom breaks because Plaintiff's frequent flare-ups were triggered by Ozempic which he discontinued taking. But the Commissioner failed to consider that Plaintiff continued to suffer from explosive diarrhea

16

even after discontinuing Ozempic in December 2019. On February 29, 2020, Plaintiff presented to the emergency room for evaluation of abdominal pain and explosive diarrhea. (Tr. 1194.) Physical examination demonstrated decreased bowel sounds and abdominal tenderness in the left lower quadrant. (Tr. 1198.) He was discharged with a prescription of Bentyl. (Tr. 1201.) On March 11, 2020, Plaintiff again sought emergency care for ongoing, worsening abdominal pain, runny stools, and fecal urgency. (Tr. 1299.) Laura Beach, NP and David Fumo, M.D. diagnosed left upper quadrant pain, chronic diarrhea, and melena, and was recommended to undergo a colonoscopy, which revealed small and large-mouthed diverticula. (Tr. 1299, 1310.) During the hearing, Plaintiff testified that at his last job, he took long bathroom breaks due to the Crohn's disease and it affected his productivity. (Tr. 59.) He indicated that he experienced flare-ups every few days and during a flare-up, he experienced vomiting, diarrhea, and left-sided flank pain. (Tr. 55-56.) He described the pain as crippling, burning, and stabbing in nature. (Tr. 56.) Given this evidence, the ALJ erred by failing to address Plaintiff's need for restroom breaks, which would cause him to be off task for a portion of the day. *Sikorski v. Berryhill*, 690 Fed. App'x 429, 433 (7th Cir. 2017).

The Commissioner summarily argues that the ALJ explicitly accounted for Plaintiff's obesity and psychogenic seizure disorder in the RFC determination. But the ALJ's discussion regarding Plaintiff's psychogenic seizures and obesity was perfunctory and insufficient. The ALJ failed to provide a logical bridge to the conclusion that no additional limitations from Plaintiff's psychogenic seizures and obesity were warranted. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Plaintiff's treatment notes show that he suffered from three or more seizures per month which required him to lie down (Tr. 58, 664, 667, 669), and light work cannot be performed by an

17

individual who needs to lie down during work hours. SSR 83-10; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). In addition, during the period at issue, Plaintiff's weight fluctuated between 217 pounds and 240 pounds, and his BMI ranged from 35.3 to 43.9. (Tr. 665, 683, 793, 1299.) SSR 19-2p requires an ALJ to explain how he considers a claimant's obesity alone and in combination with a claimant's other impairments. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The Commissioner did not explain how the ALJ addressed the combination of Plaintiff's back pain, bilateral hip pain, Crohn's disease, and excessive weight on his ability to work. SSR 19-2p (The effect of obesity can be exacerbated with certain conditions, including joint related impairments.); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). The ALJ did not explain how he determined, when considering the effects of a 240-pound frame on degenerating hips and painful low back, Plaintiff was not more significantly limited than the ALJ found. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (The ALJ was required to analyze the effect of obesity on Plaintiff's arthritis.) If the ALJ thought that Plaintiff's obesity alone, or in combination with his other impairments, did not result in additional limitations on his ability to work, he should have explained how he reached that conclusion. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).

Finally, the Commissioner contends that when supported by record evidence, the Seventh Circuit has upheld limitations to simple, routine, and repetitive tasks as consistent with a moderate rating in the area of concentrating, persisting, or maintaining pace. Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for

18

use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020).

The Commissioner points to *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019); *Pytlewski v. Saul*, 791 F. App'x 611, 615-16 (7th Cir. 2019); and *Urbanek v. Saul*, No. 19-1394, 796 Fed. Appx. 910 (7th Cir. Dec. 16, 2019), in support of her argument that a moderate rating in the areas of concentration persistence or pace demands further or additional limitations. In each of these cases, the Seventh Circuit held that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations only if they adequately account for the claimant's demonstrated psychological symptoms as found in the record. *See Urbanek*, 796 Fed. Appx. 910, 914 (citing *Jozefyk*, 923 F.3d at 498) (further citations omitted). However, the ALJ in this case did not support his findings by pointing to evidence in the record. Though the ALJ discussed Plaintiff's bipolar disorder and anxiety disorder, he did not explain whether he considered Plaintiff's concentration issues or how the RFC addressed these limits. In his function report, Plaintiff endorsed poor concentration and memory and noted that he needed reminders to go places. (Tr. 284, 288, 289.) He explained that he could pay attention for only five minutes at a time. (Tr. 289.) Treatment notes demonstrate that Plaintiff suffered from poor concentration, distractibility, racing thoughts, depressed mood, and anxiety. (Tr. 536, 698, 709, 750, 756.) The Commissioner, like the ALJ, cited no evidence that Plaintiff could sustain the concentration necessary to "carry out worklike tasks with reasonable pace and persistence" on an ongoing basis, 8 hours a day, 5 days a week, even if this restriction were properly defined. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

19

The Commissioner also maintains that it is Plaintiff's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting his capacity to work. While Plaintiff is responsible for furnishing evidence establishing the existence of medically-determinable severe impairments, Plaintiff does not need to furnish direct evidence that his impairments, for example, would allow him to sit specifically for one hour per day, or lift 10 pounds occasionally. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1513. The ALJ is responsible for assessing RFC, not the Plaintiff. 20 C.F.R. § 404.1545. In any event, the ALJ still has an obligation to build an accurate and logical bridge between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Contrary to the Commissioner's suggestion, it was the ALJ's burden to consider all the evidence, 20 C.F.R. § 404.1520, and build an accurate and logical bridge between the evidence and his conclusions at Step Two and thereafter. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). Thus, remand is warranted on the above issues related to the RFC assessment.

Next, Plaintiff argues that the ALJ erred in his evaluation of his symptoms. While addressing Plaintiff's subjective allegations, the ALJ summarized the medical evidence. (Tr. 23-29.) But a mere summary of evidence does not replace meaningful analysis of evidence. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992). The ALJ did not explain why some of the medical evidence was more important or probative than others to the finding of disability. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (An ALJ must construct a logical and accurate bridge from the evidence to her conclusion.)

The ALJ remarked that Plaintiff's physical impairments were treated conservatively with medication. (Tr. 27.) This was a mischaracterization of the record because the record shows that

20

Plaintiff sought emergency care on at least 10 occasions: August 3, 2018, November 5, 2018, November 15, 2018, December 27, 2018, June 20, 2019, July 1, 2019, November 14, 2019, December 1, 2019, February 29, 2020, March 11, 2020. (Tr. 376, 550, 569, 608, 861, 879, 1065, 1106, 1194, 1299). *Golembiewski*, 322 F.3d 915 (An ALJ's mischaracterization of the record compromises his decision). Emergency room treatment is not conservative in nature. *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013). Additionally, the ALJ did not explain the significance of "conservative treatment", or why more aggressive treatment was appropriate for Plaintiff's conditions. *Hughes*, 705 F.3d 278 (The ALJ was troubled by "lack of aggressive treatment" for the claimant's impairments, without pausing to consider what "aggressive treatment" might have solved them). Moreover, the Commissioner's Rulings require an ALJ to question a claimant about his treatment motivations and decisions before drawing a negative inference about a claimant's subjective allegations based on a claimant's infrequent treatment or failure to aggressively pursue treatment. *See e.g., Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir.2008); SSR 16-3p. However, here, the ALJ did not question Plaintiff about the lack of aggressive treatment.

The ALJ remarked that Plaintiff was taking medication for seizures despite being told that the medication would not help the pseudo-seizures. (Tr. 27.) But during a neurological consultation on August 26, 2019, Plaintiff stated that his primary care physician put him back on Keppra. (Tr, 669.) Plaintiff was taking his medications as prescribed, which bolsters Plaintiff's allegations rather than detracts from them. SSR 16-3p (An ALJ will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating subjective allegations).

The ALJ stated that Plaintiff could take public transportation, care for minor children, and

21

was working on writing a book. (Tr. 27.) While the ALJ relied on Plaintiff's ability to care for his children as evidence that was inconsistent with his subjective allegations, the ALJ did not describe what that care entailed. *Id*. Plaintiff testified that his wife babysat (others' children) at their house twice a week and while his wife was babysitting, he made sure his children (ages 9 and 11) did not misbehave and provided them with food or drinks if needed. (Tr. 42, 44, 53.) A claimant may care for family members out of necessity despite suffering disabling pain and symptoms. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir.2006); *Gentle*, 430 F.3d 867 (Claimant "must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."). Moreover, caring for family members allows for flexibility and rest breaks. *Gentle*, 430 F.3d 867–68 (Caring for a child "has a degree of flexibility that work in the workplace does not."). Further, the ALJ did not explain the significance of the book writing. *Roddy v. Astrue*, 705 F.3d 637, 639 (7th Cir.2013) ("Had the ALJ been concerned about the significance of the settlement, he could have questioned Roddy about it at the hearing."). And Plaintiff testified that he was no longer using public transportation and that his wife drove him places. (Tr. 44.)

Lastly, the ALJ noted that Plaintiff was attending his doctors' appointments alone. (Tr. 27.) But an individual suffering from severe physical and mental impairments would have a strong interest in attending appointments and seeking relief rather than missing appointments. *Virden v. Colvin*, 14-CV-1219, 2015 WL 5598810, at *11 (C.D. Ill. Sept. 22, 2015) Moreover, the ALJ would have undoubtedly discredited Plaintiff's allegations if he failed to attend appointments. SSR 16-3p ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's

symptoms are inconsistent with the overall evidence of record.) Thus, for the above reasons, remand is required on the issues related to the evaluation of Plaintiff's symptoms.

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 21, 2022.

s/ William C.  Lee<br>William C. Lee, Judge<br>United States District Court